UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| ISIDRO MIGUEL DELACRUZ,<br><br>    Petitioner,<br><br>v.<br><br>DIRECTOR, Texas Department of Criminal Justice, Correctional Institutions Division,<br><br>    Respondent. | No. 6:24-CV-013-H |

## ORDER

Before the court are Delacruz's motion for an order directing the responsible officials with the Texas Department of Criminal Justice (TDCJ) to unshackle Delacruz during mental health testing currently scheduled to take place on June 10–11, 2025 (Dkt. No. 20), and the respondent's opposition (Dkt. No. 21). The respondent has not furnished this Court with any fact-specific allegations or evidence suggesting that allowing Delacruz's arms and hands to be free from shackles during his scheduled mental health evaluation poses a foreseeable risk of possible violence or any violation of established TDCJ policies or protocols. For the reasons discussed below, Delacruz's motion requesting limited unshackling on June 10–11, 2025, will be granted with additional caveats designed to address Respondent's concerns about potential risks.

1. **Factual background**

Delacruz was indicted for murder of a child younger than ten years of age. A Tom Green County jury convicted Delacruz of capital murder in April 2018 and answered the Texas capital sentencing special issues favorably to the prosecution, thus mandating entry of a sentence of death.

The Texas Court of Criminal Appeals (TCCA) affirmed Delacruz's conviction and sentence on direct appeal. *Delacruz v. State*, AP-77,079, 2023 WL 2290864 (Tex. Crim. App. Mar. 1, 2023). The TCCA subsequently denied Delacruz's initial application for state habeas relief. *See Ex parte Delacruz*, WR-88,447-01, 2024 WL 1298156 (Tex. Crim. App. Mar. 27, 2024).

**2.    Proceedings in this Court**

Delacruz filed his original petition for federal habeas relief in this Court on March 26, 2025, asserting sixteen claims for relief. Dkt. No. 18. Prior to the filing of Delacruz's original federal habeas petition, the parties entered into a joint agreed motion requesting this Court issue a new scheduling order, which allowed Delacruz to amend his original petition long after the expiration of the one-year statute of limitations applicable to most federal habeas claims. Dkt. No. 12. This Court granted the joint agreed motion. Dkt. No. 13. By entering into the agreed motion, the parties effectively deprived the Court of the opportunity to weigh in on the issues of whether amendment of the original petition was warranted and whether additional factual development or evidentiary development was necessary prior to the filing of Delacruz's proposed amended petition.

On May 14, 2025, Delacruz moved for an order directing TDCJ officials to unshackle him during his scheduled mental health examination. Dkt. No. 20. He supported the motion with an unsworn report from the mental health expert representing that it is necessary to have Delacruz's hands and arms unshackled during the upcoming mental health evaluation. Dkt. No. 20-2. The Court understands that routine neuropsychological evaluations often include neuromotor testing, which require a person being evaluated to be able to move his or her hands and arms with sufficient freedom to

2

complete basic maneuvers, including drawing rudimentary pictures, circling objects drawn on paper, writing words, and drawing lines on diagrams. But Delacruz has failed to present the Court with any evidence suggesting it is reasonably necessary for him to be completely unshackled during his upcoming mental health evaluation.

To the contrary, the statement of TDCJ Director Eric Guerrero suggests that TDCJ allows inmates to be evaluated while unshackled at times and under circumstances that TDCJ deems to be reasonably necessary without causing undue security issues. *See* Dkt. No. 21-3. The parties have not alleged any facts or presented evidence to the Court showing any reason to believe that unshackling Delacruz's arms and hands during his scheduled June 10–11, 2025 mental health evaluation will pose a foreseeable risk of violence or misconduct. The unsworn statement of Delacruz's mental health expert does not suggest, however, that removing restraints from Delacruz's waist or lower body will assist Dr. Ouaou to effectively evaluate Delacruz' mental health. On the contrary, Dr. Oauou's unsworn letter concludes only that it is necessary to unshackle Mr. Delacruz's arms.

**3.    Analysis**

The respondent objects to Delacruz's motion primarily on the basis that the Court lacks jurisdiction to authorize factual or evidentiary development of claims that are controlled by the Antiterrorism and Effectively Death Penalty Act of 1996 (AEDPA), as construed by the United States Supreme Court.

This Court's review of Delacruz's claims for federal habeas corpus relief is governed by AEDPA because Delacruz filed this federal habeas corpus action after its effective date. *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

AEDPA seeks to reduce delays in the execution of state and federal criminal sentences, especially capital sentences. *Ryan v. Valencia Gonzales*, 568 U.S. 57, 76 (2013); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *Rhines v. Weber*, 544 U.S. 269, 276 (2005). AEDPA also requires litigants to pursue claims in state court prior to seeking federal collateral review. *Duncan v. Walker*, 533 U.S. 167, 181 (2001); *see also Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (explaining that AEDPA imposes the burden on a petitioner to litigate to the maximum extent possible, including fairly presenting all available evidence supporting, his claims in state court). And AEDPA aims to prevent piecemeal litigation and gamesmanship. *Maywood v. Patterson*, 561 U.S. 320, 334 (2010). Thus, under AEDPA, federal habeas review of claims disposed of on the merits in state court is limited to the record that was before the state court that adjudicated the prisoner's claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

But it is unclear at this time whether Delacruz intends to present new claims in his proposed amended petition that were unexhausted in state court or whether he is currently seeking factual or evidentiary development for the purpose of attempting to supplement the record with a claim that was resolved on the merits in state court—in disregard of the Supreme Court's holding in *Cullen*, 563 U.S. at 182. As a result, the respondent's reliance on the limits AEDPA places on federal habeas review is premature. The respondent's decision to join in the agreed motion for a new scheduling order effectively prevents this Court from examining whether an amendment to the petition is appropriate in this proceeding after the expiration of the AEDPA's one-year statute of limitations.

Delacruz's terse motion for an order allowing his arms to be unshackled during his upcoming mental health evaluation does not explain what types of information or evidence Delacruz's mental health expert hopes to glean from the June 10–11, 2025 evaluation. It is possible that Delacruz seeks new mental health evidence to support new claims that he is either intellectually disabled or that he was mentally incompetent at the time of his capital murder trial. No such claims were fairly presented to the state court during either Delacruz's direct appeal or initial state habeas corpus proceedings. Should Delacruz now wish to present this Court with claims of that nature, it is possible a stay authorized under the Supreme Court's holding in *Rhines v. Weber*, 544 U.S. 269, 276 (2005), could be in order in this federal habeas proceeding.

The Court disagrees with respondent that it lacks authority to grant this motion. In *Ayestas v. Davis*, 584 U.S. 28, 45–47 (2018), for example, the Supreme Court held that it is error for a district court to deny a federal habeas petitioner funding for investigative expenses (including presumably for a mental health evaluation) if there is a credible possibility that the investigation sought could help the petitioner overcome a procedural default arising from the petitioner's failure to exhaust state remedies on a new claim through a showing of ineffective assistance by the petitioner's state habeas counsel. Thus, this Court possesses the statutory authority to authorize federal-taxpayer funding for the purpose of allowing a federal habeas petitioner to develop new evidence in support of an unexhausted claim for which the petitioner may be able to overcome procedural default through a showing of ineffective assistance by state post-conviction counsel. Therefore, this Court necessarily possesses the authority to ensure that the federal-taxpayer dollars being spent for that purpose are spent in an effective and efficacious manner. This Court has the authority

5

to ensure that a mental health evaluation funded by federal taxpayers is conducted in a manner that produces professionally reliable results. *See* 18 U.S.C. § 3599(g)(2).

The Court notes the lack of specificity in the record at present regarding exactly what type of new claims (if any) Delacruz is seeking to support through his upcoming mental health evaluation, and the fact that both parties have chosen to wait until the last possible second to demand an order addressing this issue. And, typically, the appropriate time for seeking to have a federal habeas petitioner evaluated for possible mental health issues (including intellectual disability and retrospective evaluation of competence to stand trial) is before the date that an original federal habeas corpus petition is filed. But, in an abundance of caution, the Court will issue the order requested by Delacruz by instructing that his arms and hands be unshackled during his mental health evaluation. The respondent's safety or security concerns can adequately be addressed by securing Delacruz's waist and lower body in any reasonable manner deemed prudent by responsible TDCJ officials, so long as the restrictions on the mobility of Delacruz's arms and hands do not unreasonably interfere with his mental health testing.

This Court retains the authority to impose appropriate sanctions, including the possible dismissal with prejudice of this federal habeas corpus action, should Delacruz engage in any violent, disruptive, or non-compliant behavior during his scheduled mental health evaluation. Delacruz's counsel of record shall communicate to Delacruz the essential necessity that he conducts himself appropriately during his forthcoming mental health evaluation. Counsel for respondent shall timely notify responsible TDCJ officials of the contents of this order.

In sum, the Court grants Delacruz's motion to be unshackled during his mental health evaluation to be conducted June 10–11, 2025 (Dkt. No. 20) as follows: (1) during the mental health evaluation of Delacruz on June 10–11, 2025, Delacruz shall be made available to Dr. Ouaou for mental health testing without any shackles on Delacruz's arms or hands; and (2) Delacruz shall conduct himself in a manner appropriate for such testing, without engaging in any violent, disruptive, or otherwise non-compliant behavior.

So ordered on June 6, 2025.

*James W. Hendrix*
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE